# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

| | |
|---|---|
| GREEN ROOM, LLC, et. al., | |
|     Plaintiffs – Appellants, | Nos. 24-8053 & 24-8054 |
| v. | |
| State of Wyoming, et. al., | (D. Wyoming) |
|     Defendants – Appellees. | |

# APPELLANTS' REPLY BRIEF

Appeal from the United States District Court, Wyoming Division

(D.C. No. 2:24-CV-00128-KHR)

The Honorable Kelly H. Rankin

DONNA D. DOMONKOS    BRITTANY THORPE
Domonkos & Thorpe, LLC
1914 Logan Avenue
Cheyenne, Wyoming 82001
Telephone: (307) 426-5015
Facsimile: (307) 426-5017
donna@dandt.llc
brittany@dandt.llc

# TABLE OF CONTENTS

Table of Authorities ……………………………………………………....... 3

Argument I………………………………………………………………………….4

**THE ORDER DENYING TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION IS NOT MOOT.**

Argument II……………………………………………………………................8

**SEA 24 IS UNCONSTITUTIONAL BECAUSE IT IS A REGULATORY TAKING.**

Argument III……………………………………………………………………12

**SEA 24 IS UNCONSTITUTIONALLY VAGUE.**

Conclusion ……………………………………………..………………………...14

Certification of Compliance …………………………….………………………..15

Certificate of Service …………………………………..………………………16

# TABLE OF AUTHORITIES

Page

*Loki Brands LLC v. Platkin*, Civil Action No. 24-9389 (ZNQ) (TJB), 2024 U.S. Dist. Lexis 185237 (D.N.J. Oct. 10, 2024)……………………………………..11

*Medina v. Pacheco*, No. 97-2013, 1998 U.S. App. LEXIS 22533 (10th Cir. Sep. 14, 1998).……………………………………………………………6

*Mugler v. Kansas*, 123 U.S. 623 (1887)……………………………………………8

*Roeber v. Gateway Found.*, No. 19-cv-200 ABJ, 2020 U.S. Dist. LEXIS 164907 (D. Wyo. Aug. 17, 2020)……………………………………………………8

*Penn Central Transportation Co. v. New York City,* 438 US 104 (1978)……………9

*Support Working Animals, Inc. v. Desantis*, 457 F. Supp. 3d 1193 (N.D. Fla. 2020)…………………………………………………………………….9

## **Other Authorities**

SEA 24……………………………………………………6, 8, 12, 13, 14, 15

7 U.S.C. §1639o………………………………………………………………...11

Wyo. Stat. § 31-5-233(a)(ii)(C)…………………………………………………14

C.F.R. § 990.1……………………………………………………………………11

# REPLY ARGUMENT I

**THE ORDER DENYING TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION IS NOT MOOT.**

Appellee has raised the issue of mootness. The Appellee argues this Court should not address the argument on whether it was an abuse of discretion for the District Court to deny Appellant's Motion for Temporary Restraining Order or Preliminary Injunction because the issue became moot upon the District Court's Order Granting Defendants' Motion to Dismiss. The District Court's Order Granting Defendants' Motion to Dismiss specifically relies upon its ruling in its Order Denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

> This Court recently entered an Order Denying Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction on July 19, 2024. [ECF No. 30]. Much of the analysis remains the same and the Court will incorporate the reasoning and cited authority from that Order herein.

Appendix, Vol. II, p. 44.

It follows that if the two orders are intertwined, this Court must address the Order Denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction in order to address the Order Granting Defendants' Motion to Dismiss. The most important aspect of both of these orders is the lack of any **evidence** regarding harm to the State.

In its pleadings, the Appellee cites to different news articles regarding the alleged harm of Delta-8.

> An injunction would prevent the State from addressing public concerns regarding the safety of Delta-8 products and other psychoactive products, and its distribution to citizens in the State of Wyoming. The legislature sought to address these concerns through this legislation following reports of Wyoming teens ending up in emergency rooms after consumption of Delta-8. WyoFile, *Wyoming ban on delta-8, similar hemp products near finish* line (Feb. 29, 2024), https://wyofile.com/wyoming-ban-on-delta-8-similar-hempproducts-nears-finish-line/. Following an increase in sales and consumption of Delta-8THC, the U.S. Food and Drug Administration collected data and sought to inform the public about serious health risks associated with the consumption of the product. U.S.Food & Drug Administration, *5 things to Know about Delta-8 Tetrahydrocannabinol –Delta-8 THC* (May 4, 2022), https://www.fda.gov/consumers/consumer-updates/5-thingsknow-about-delta-8-tetrahydrocannabinol-delta-8-thc.
>
> In May of 2022, the FDA issued warning letters to companies selling CBD and Delta-8 THC products stating that "[a]ny delta-8 THC product claiming to diagnose, cure, mitigate, treat, or prevent diseases is considered an unapproved new drug," citing concerns about the potential health effects of Delta-8 THC products demonstrated in an increase in calls to national poison control centers and an increase in hospitalizations and emergency room visits. U.S. Food & Drug Administration, *FDA Issues Warning Letters to Companies Illegally Selling CBD and Delta-8 THC Products* (May 4, 2022), https://www.fda.gov/news-events/press-announcements/fda-issues-warning-letters-companies-illegallyselling-cbd-and-delta-8-thc-products.

Appendix, Vol. I, pp. 227-228.

While the Appellees included these references in their pleadings, they did not present any other evidence of harm to the citizens of Wyoming. As this Court knows, pleadings are not evidence.

> Although not for the reason offered by counsel. Counsel for the Medinas argues the record is sufficient on this issue because the record contains the opening statements and the pre-trial pleadings. Counsel should know such statements and pleadings are not evidence. The district court based its ruling on the evidence produced at trial. Likewise, our review of that decision must be based on the evidence produced at trial.

*Medina v. Pacheco*, No. 97-2013, 1998 U.S. App. LEXIS 22533, at *9 n.5 (10th Cir. Sep. 14, 1998).

At the evidentiary hearing for the temporary restraining order, Appellee presented only one witness, Sarah Barrett, a supervisor with the Wyoming State Crime Laboratory. Ms. Barrett testified to many aspects of testing for Delta-8 and about her testimony to the Wyoming Legislature during committee meetings on SEA 24.

> [Ms. Singleton:]. And were you present during the judiciary committee meeting's discussions?
>
> [Ms. Barrett]: Yes.
>
> Q. And did you personally testify in relation to the bill?
>
> A. I did.
>
> Q. And what were you asked to testify about?
>
> A. I was asked to provide some opinions on delta-8 THC and why it -- so delta-8 THC in our state was actually already under Schedule I. It was under delta-6 THC by name, but those two compounds are the exact same compound. They are different in name based on two different naming systems in chemistry. So delta-6 THC, which is delta-8 THC, was already in Schedule I prior to the hemp laws coming into play.

Q. So it was already illegal prior to July 1 of this year?

A. Yes, it was a Schedule I controlled substance.

The issue was because a very small amount of delta-8 THC occurs naturally in the hemp plant, we couldn't – and there is no test to say whether or not that delta-8 THC is synthetic or naturally occurring, we were unable to say whether that delta-8 THC was Schedule I or not because of that synthetic versus naturally occurring issue.

Appendix, Vol. I, pp. 151-152.

There was no testimony on how the inability to test for synthetic versus natural Delta-8 was harmful to Wyoming citizens. After Ms. Barrett testified, the evidence was closed on the day of the hearing.

THE COURT: All right. That closes the evidence in this matter.

Appendix II, p. 156.

The District Court abused its discretion when it denied the Motion for Temporary Restraining Order or Preliminary Injunction without any evidence of harm for the balancing of harm analysis. Since the Order Denying the Motion for Temporary Restraining Order or Preliminary Injunction is flawed, the Order Granting Motion to Dismiss is also flawed.

Appellant is aware this Court may find there is no substantive right to bring a claim. Appellant has addressed why there is a substantive right to bring a claim in this case in its opening brief and will not reiterate the argument here. If this Court does hold that the District Court's finding of no substantive right to bring a claim is

upheld, Appellant agrees the appeal from the Order Denying Motion for Temporary Restraining Order or Preliminary Injunction is moot. See, *Roeber v. Gateway Found.*, No. 19-cv-200 ABJ, 2020 U.S. Dist. LEXIS 164907 (D. Wyo. Aug. 17, 2020).

THEREFORE Appellant respectfully requests this Court find there is a substantive right to bring a claim and address the appeal for the Order Denying Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction.

## **REPLY ARGUMENT II**

**SEA 24 IS UNCONSTITUTIONAL BECAUSE IT IS A REGULATORY TAKING.**

The Appellee correctly states that a taking may take the form of physical appropriation of property or through a regulation that restricts the use of property to the point it becomes a taking, and further, two categories of regulatory action are deemed per se takings: 1) "where government requires an owner to suffer a permanent physical invasion of her property"; and 2) a regulation that "completely deprive[s] an owner of 'all economically beneficial us[e]' of her property."

Appellee also points out that courts have, however, also recognized that a state's exercise of its police power through valid legislation that is implemented for the health, morals or safety of the community is not "a taking or an appropriation of property for the public benefit." *Mugler v. Kansas*, 123 U.S. 623 (1887).

8

Here, the Wyoming State Legislature failed to properly exercise its police power to protect the health, morals or safety of the community. At the evidentiary hearing for the Motion for Temporary Restraining Order or Preliminary Injunction no evidence was presented on how the bill would protect the health, morals or safety of the community.

Appellee alleges that SEA 24 is not regulating the use of property; that "it is a prohibition of certain unsafe substances." However, and as mentioned before, no justification has been provided as to why the substances at issue are unsafe, nor why this is a valid exercise of the legislature's police powers to protect the health, morals, and safety of Wyoming's citizens.

The as-applied regulatory taking test from *Penn Central Transportation Co. v. New York City,* 438 US 104 (1978) suggests that three factors determine whether a zoning regulation amounted to a taking: 1) the economic impact of the regulation on the plaintiff; 2) the extent to which the regulation interferes with the plaintiff's investment-backed expectations; and 3) the character of the governmental action. *Support Working Animals, Inc. v. Desantis*, 457 F. Supp. 3d 1193, 1217-18 (N.D. Fla. 2020) (citing *Penn Central*, 438 U.S. 104).

Here, SEA 24 had a devastating impact on the plaintiff's businesses. At hearing one of the Appellants testified that its business had decreased 80% since SEA took effect, going from approximately $366,000.00 to $73,200 in the span of a

9

month (App'x Vol. II at 85-11). To suggest this is not a significant economic impact of the regulation on the plaintiff is ignorant at best. In addition to lost profits, the Appellant testified that nearly $80,000 in sales tax revenue would no longer be paid to the state of Wyoming after SEA 24 went into effect (App'x Vol. II at 88-9). Finally, the Appellant testified that it had lost nearly half its workforce after SEA 24 went into effect, from 37 employees to 19 (App'x Vol. II at 88-9). Wyoming jobs were lost to other state markets that permit the type of products that are prohibited under SEA 24

Secondly, SEA 24 greatly interferes with Appellant's investment-backed expectations. At the hearing, one of the Appellants testified that it has lost all its original investment in its business as a result of SEA 24 (App'x Vol. II at 87-88). Another Plaintiff stated that it invested $160,000 in pharmaceutical-grade equipment to operate its business and its inability to manufacture products now banned under SEA 24 would prevent it from repaying the loan it received for the equipment (App's Vol. II at 127-28).

Perhaps most importantly, the Wyoming Legislature did not exercise its police powers to protect the health, morals, and safety of its population. Banning these products outright does nothing to eliminate their demand and rather forces consumers to purchase them via e-commerce from sources that are possibly regulated. An appropriate exercise of police powers would have been to create

regulations surrounding the manufacture, distribution and retail of these products in ways that promoted small businesses and discouraged the availability of these products to minors.

Moreover, an appropriate exercise of police powers would not have created a state law that is clearly preempted by federal legislation to the contrary. As the district court noted, Congress intended for States to retain regulatory authority over hemp:

> Perhaps the most telling provision on Congress' intent is contained in the text of the statute at 7 U.S.C. § 1639p. Subsection (3) paragraph (A) is entitled "[n]o preemption." Specifically, it states: "[n]othing+ in this subsection preempts or limits any law of a State or Indian Tribe that (i) regulates the production of hemp; and (ii) **is more stringent than this subchapter**." §1639p(a)(3)(A) (emphasis added). This statement indicates Congress' intent for States to retain regulatory authority over hemp.

(ECF No. 30, p. 12).

As correctly pointed out by the Plaintiffs in their Appeal Brief, SEA changes the Congressional definition of hemp found in 7 U.S.C. §1639o. Further noted by *Loki Brands LLC v. Platkin*, Civil Action No. 24-9389 (ZNQ) (TJB), 2024 U.S. Dist. Lexis 185237, at *25 (D.N.J. Oct. 10, 2024). More importantly, C.F.R. § 990.1, states: "Product. To grow hemp plants for market, or for cultivation for market, in the United States."

SEA goes beyond the purview of the 2018 Farm Bill in that its regulation of the "production" of hemp addresses the types of products that can be manufactured, how they can be manufactured, and what they can contain. As a result of this, the Wyoming Legislature improperly exercised its police powers in contravention of federal law, depriving Plaintiffs of the benefits of the property.

Despite the district court's contention that Green Room can still grow, process, and sell hemp within the confines of SEA 24, its inability to manufacture hemp-derived products, including nonpsychoactive substances such as CBD, renders its investments into the industry meaningless.

THEREFORE it is respectfully requested this Court find SEA 24 is an unconstitutional taking.

## **REPLY ARGUMENT III**

**SEA 24 IS UNCONSTITUTIONALLY VAGUE.**

When addressing Appellant's claim that SEA 24 is void for vagueness, Appellee asserts that Appellant has pled 1) SEA 24 is overbroad because it criminalizes structural, optical or geometric isomers of tetrahydrocannabinol; 2) SEA 24 is overbroad because the definition of "synthetic substances" includes "non psychoactive substances;" and 3) SEA is overbroad because "any psychoactive structural, optical, or geometric isomers of tetrahydrocannabinol" includes non-psychoactive isomers (Appellee's Br. at 50, citing App'x Vol. I at 26, 32).

The title of SEA 24 is "Hemp-limitations on psychoactive substances." It stipulates that ""hemp" or "hemp product" means all parts, seeds and varieties of the plant cannabis sativa l., whether growing or not, or a product, derivative, extract, cannabinoid, isomer, acid, salt or salt of isomer made from the plant with no synthetic substance and with a THC concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis when using post decarboxylation or another similarly reliable testing method." SEA 24 at (a)(iii).

SEA 24 continues by defining THC to include "A) tetrahydrocannabinol, the psychoactive component of the cannabis plant, with the scientific name trans-delta 9-tetrahydrocannabinol." Despite this definition, testimony at the evidentiary hearing by the Appellant indicates that at least one other cannabinoid in the plant, CBD, is psychoactive (App'x Vol. II at 101-1). Given CBD has a pharmacological impact on the body, it is psychoactive. To add additional confusion, substances like alcohol, nicotine, caffeine, along with vitamins, acetaminophen, and sugar are also psychoactive given their pharmacological impact on the human body (App'x Vol. II at 100).

Much like the above, the third prong of the definition under SEA 24 is also void and leaves a reader questioning what is meant. It states that THC also means: "any psychoactive structural, optical, or geometric isomers of

tetrahydrocannabinol." Without a definition of what is meant by "psychoactive" the statute's meaning is unclear and vague to an ordinary reader.

Comparatively, Wyoming has other statutes that reference psychoactive substances. Wyoming Statute § 31-5-233(a)(ii)(C) addresses "Driving or having control of vehicle while under influence of intoxicating liquor or controlled substances; penalties." It states, in relevant part: "Controlled substance includes: any drug or psychoactive substance, or any combination of these substances, capable of impairing a person's physical or mental faculties." Wyo. Stat. § 31-5-233(a)(ii)(C). Unlike SEA 24, which makes no reference to what is meant by "psychoactive" this statute clearly describes that a psychoactive substance is capable of impairing a person's physical or mental faculties. The lack of specificity in SEA 24, where other Wyoming statutes clearly prohibit what is meant by psychoactive, is impermissibly vague.

THEREFORE Appellants respectfully request this Court find SEA 24 unconstitutionally vague.

## CONCLUSION

If this Court does hold that the District Court's finding of no substantive right to bring a claim is upheld, Appellant agrees the appeal from the Order Denying Motion for Temporary Restraining Order or Preliminary Injunction is moot. However, if the District Court's finding is not upheld, the reliance in the Order

14

Granting Motion to Dismiss on the Order Denying Motion for Temporary Restraining Order or Preliminary Injunction requires this Court to address both orders.

Also, the lack of any evidence regarding the proper use of state police powers makes SEA 24 unconstitutional.

/s/ Donna Domonkos
Donna D. Domonkos  WSB #5-2981
donna@dandt.llc

/s/ Brittany Thorpe
Brittany Thorpe  WSB #7-6490
brittany@dandt.llc
DOMONKOS & THORPE, LLC
1914 Logan Avenue
Cheyenne, WY  82001
(307) 426-5015

## CERTIFICATION OF COMPLIANCE

Appellants certify that this brief complies with Fed. R. App. P. 32(a)(7)(B)(ii) because it contains 2780 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). Appellants further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Brittany Thorpe
Brittany Thorpe

## CERTIFICATE OF SERVICE

I hereby certify that on the 2ND day of January, 2025, a true copy of this Opening Brief was electronically filed via the CM/ECF system, which will deliver an electronic copy thereof to all counsel of record.

/s/ Brittany Thorpe
Brittany Thorpe
